■ In the Matter of FRANK VINDIGNI, Respondent, v. BENJAMIN ALTMAN, as Commissioner of the Department of Rent and Housing Maintenance, Appellant.— In a proceeding pursuant to article 78 of the CPLR by a landlord to review appellant's determination dated June 14, 1971, revoking a decontrol order of the District Rent Director of the Brooklyn District Rent Office and directing that the premises in question are subject to rent control, the appeal is from a judgment of the Supreme Court, Kings County, entered December 2, 1971, which annulled the determination and reinstated the decontrol order. Judgment reversed, on the law, without costs, petition dismissed on the merits and appellant's determination reinstated. Prior to 1960 the subject accommodation consisted of five rooms on the second floor *and* two rooms in the attic of the two-family house in question. It was at that time an apartment subject to rent control and registered as a seven-room apartment. The entire apartment was rented for single-family occupancy. When the apartment became vacant sometime in 1960, it automatically became decontrolled under the provisions of section Y51–3.0 (subd. 2, par. [i] cl. [4]) of the Administrative Code of the City of New York, which excludes from rent control those housing accommodations in one- or two-family houses which became vacant after April 1, 1953. This code section also contains a caveat, however, that this exemption

from rent control shall remain effective only "so long as the housing accommodations [exempted] are not occupied for other than single family occupancy". Following the decontrol of the subject accommodation, the landlord consistently rented the five-room portion to one tenant and the two rooms in the attic to another tenant. The present tenant of the five rooms on the second floor took possession thereof in 1967 and thereafter filed a protest of rent overcharge, claiming that her apartment had lost its decontrolled status when the landlord rented the two rooms in the attic to another tenant and that accordingly she should be paying the rent provided for under rent control and not the higher rent she had been paying. The landlord had claimed that the five-room apartment was decontrolled. He at first contended that the two rooms in the attic were not being rented out, but only being used by friends. Thereafter, however, he evicted the tenant of the two rooms. The District Rent Director, on making a physical inspection of the premises, found that the rooms in the attic were vacant and issued a certificate of decontrol. The second-floor tenant protested the decontrol order and, following a *de novo* review of the entire record, the appellant Commissioner revoked the decontrol order. The Commissioner found that the second-floor apartment was a registered seven-room apartment which had lost its decontrolled status when the landlord rented it for other than single-family occupancy. Special Term, in reversing the Commissioner's determination, ruled that, since the tenant in the attic had been removed, there were no longer two families occupying the seven-room accommodation and that, accordingly, the Commissioner had erred. In our opinion Special Term erred in holding that the second-floor apartment was a five-room accommodation which was decontrolled. The provisions of the Administrative Code are clear to the effect that the exemption from rent control of the subject accommodation was lost when the seven-room accommodation was split up and rented to two different tenants. Once the exemption was lost, the subject accommodation had to requalify for exemption or decontrolled status by becoming vacant (*Matter of Wagner*, N. Y. L. J., June 12, 1968, p. 17, col. 8; *Matter of Arana* [*Berman*], N. Y. L. J., May 23, 1968, p. 20, col. 1). The belated eviction of an illegal third tenant from a legal two-family house does not automatically decontrol housing accommodations therein which have lost their decontrolled status as a result of the renting to the illegal third tenant (*Matter of Arana* [*Berman*], *supra*). Petitioner's reliance upon the March 27, 1968 policy statement by the appellant Commissioner (see *McWhite* v. *Ford*, N. Y. L. J., June 30, 1972, p. 14, cols. 5, 6) is misplaced for two reasons. First, the new policy specifically provides that it does not change the prevailing law to the effect that use of decontrolled accommodations for more than single-family occupancy will cause such accommodations to lose their decontrolled status. The new policy simply sets forth that the addition of a third *self-contained* individual accommodation unit *separate* and *distinct* from the decontrolled apartments no longer causes the decontrolled apartments to lose their exempt status by making a two-family house a *de facto* three-family house. Second, the afore-mentioned policy, promulgated in 1968, cannot be retroactively applied to the situation which existed in 1967 when the complaining tenant moved in (*Matter of Wagner*, *supra*). Hopkins, Acting P. J., Munder, Martuscello, Gulotta and Brennan, JJ., concur.